IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORAINE T.[1],

        Plaintiff,

v.

**ANDREW M. SAUL,** Commissioner of Social Security,

        Defendant.

Case No. 6:19-cv-1791-SI

**OPINION AND ORDER**

John E. Haapala, Jr., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Loraine T. brings this action under § 205(g) of the Social Security Act (the Act),

*as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act and Supplemental Security Income (SSI) under Title XVI of the Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB and SSI on April 7, 2017 alleging a disability onset date of March 30, 2016. AR 22. On May 28, 2019, the Commissioner determined that Plaintiff was not disabled. AR 128. Plaintiff appealed and testified at a hearing held before an Administrative Law Judge (ALJ). In a decision dated May 28, 2019, the ALJ found that Plaintiff was not disabled. AR 22-31. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on September 9, 2019. AR 10-12. Thus, the ALJ's decision became the final decision of the Commissioner. AR 10.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one of the sequential analysis, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2021 and had not engaged in substantial gainful activity since March 30, 2016, her alleged disability onset date. AR 24. At step two, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, severe neurogenic claudication due to severe lumbar spine stenosis, lumbar radiculopathy, morbid obesity, and diabetes mellitus. *Id*. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 27.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 20 C.F.R. 416.967(a) except she can never climb ramps, stairs, ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop, but never kneel, crouch, or crawl. She can tolerate no exposure to workplace hazards such as unprotected heights.

*Id.* At step four, the ALJ found that Plaintiff could perform past relevant work as a Bookkeeper or Accounting Clerk (Payable). AR 30. Because the ALJ found that Plaintiff could perform past relevant work, the ALJ did not proceed to the fifth step. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ improperly rejected both Plaintiff's symptom testimony and the testimony of Plaintiff's daughter, Justicia T. The Court addresses each argument in turn.

### A. Plaintiff's Subjective Symptom Testimony

#### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner also recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others on the claimant's location, frequency and duration of symptoms, the effect of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports about the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an

individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Plaintiff's Testimony about Her Limitations

Plaintiff testified that her back and neck pain was her biggest problem, AR 62, and rated that pain as a seven or eight on a severity scale of one-to-ten, AR 65. Plaintiff also testified that doctors told her not to lay, stand, and especially not sit for more than 45 minutes at a time. AR 63. When asked whether she thought she could complete a job where she was permitted to sit or stand as needed, Plaintiff answered that she needed "to lay down because it's the angle that will give me some relief." AR 66-67. Plaintiff added that the medication she takes to manage her pain causes confusion and a lack of focus. AR 62, 65. Plaintiff also discussed her difficulty sleeping. AR 65-66.

Plaintiff's written submissions contained largely the same complaints. In her application, Plaintiff complained of "[d]eepening depression," being "[u]nable to concentrate/stay on tasks/recall is very limited," and being unable to "sit or stand for any amount of time-due to Pain." AR 250. In her a function report, Plaintiff reported that her difficulty standing causes her to struggle with, and take an abnormally long time, showering and completing other personal hygiene tasks. *See* AR 290. Similarly, Plaintiff makes only simple meals like toast or a bowl of cereal because she cannot stand long enough to cook. *Id.* Plaintiff reported doing no chores or

yard work. AR at 291. Plaintiff does go shopping for food and other items, *id.*, but, because she cannot lift greater than 20 pounds, she must make multiple trips to the store during the week, *id*. Plaintiff described her day as:

> Wake up, barely sleep, wake up all night, sit in room, turn on TV.
> Just sit mostly, or can try to see son or run light errands just to
> force self to get out.

AR 289. Plaintiff reported that her back pain impaired all her abilities save "[t]alking," "[h]earing," "[s]eeing," and "[g]etting [a]long [w]ith [o]thers." AR 293.

### 3. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 28. The ALJ identified Plaintiff's activities of daily living, conservative treatment history, and objective medical records as bases for discounting Plaintiff's testimony. AR 28-30. The Court addresses each rationale in turn.

#### a. Activities of Daily Living

The ALJ discounted Plaintiff's symptom testimony in part because the ALJ believed that Plaintiff's activities of daily living "indicate[d] a higher level of function than alleged by" Plaintiff. AR 29. The ALJ highlighted that Plaintiff "indicated she could perform adequate self-care, prepare simple meals, drive a car, handle her finances, and go out to the store," as well as "watch[] TV, and care for her pets." *Id.*

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not amount to

PAGE 9 – OPINION AND ORDER

full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities cannot discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Plaintiff's activities of daily living are not transferrable to the workplace. The activities the ALJ identifies as inconsistent with Plaintiff's symptom testimony—running errands, self-care, driving a car—are exactly the sorts of activities the Ninth Circuit has repeatedly explained do *not* conflict with a claimed disability. *See, e.g.*, *Vertigan*, 260 F.3d 1044 at 1050 ("certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, do[] not in any way detract from her credibility as to her overall disability."). Other district courts, following the Ninth Circuit's instruction, have found that an ALJ's credibility determination was erroneous when it relied on a plaintiff's activities much like (and sometimes more involved than) Plaintiff's activities. *See Chong v. Colvin*, 2013 WL 6633073, at *8 (C.D. Cal. Dec. 16, 2013) (finding that the ALJ erred in discrediting the symptom testimony of a plaintiff who complained

of back and neck pain and who "perform[ed] light housekeeping, prepare[d] meals, and [ran] errands," in addition to "going to the movies").

Plaintiff's testimony about her activities of daily living, however, contradicts her other testimony. Plaintiff reported that she "cannot sit or stand for any amount of time." AR 250. In her function report, however, Plaintiff stated that her day consisted of "sit[ting] in room" and "[j]ust sit[ting] mostly." AR 289. The record is somewhat ambiguous. Plaintiff testified at the hearing that she is not supposed to sit for more than 45 minutes. AR 63. The substantial evidence standard, however, requires the Court to defer to the ALJ's findings even if the evidence would also support a different finding. *Burch*, 400 F.3d at 680-81. Because substantial evidence supports the ALJ's finding that Plaintiff's activities of daily living conflict with Plaintiff's testimony about her own limitations, the ALJ did not err by discounting Plaintiff's symptom testimony.

### b. Conservative Course of Treatment

The ALJ also found that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 29. The ALJ noted that Plaintiff's treatment "consist[ed] of largely over-the-counter medication and occasionally prescription medicine." *Id.*

Routine, conservative treatment can be enough to discount a claimant's subjective testimony about the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is

not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, substantial evidence does not support the ALJ's finding that Plaintiff's treatment history is "conservative" or that her use of prescription medication was only "occasionally." Plaintiff took prescription medication throughout the relevant period. Plaintiff takes Gabapentin for her pain, *see* AR 61, 294, 302, and previously took Tramadol and Vicodin, AR 61. These medications are not conservative. *See Van Buren v. Colvin*, 2013 WL 4782171, at *8 (D. Or. Sept. 5, 2013) (finding that the ALJ erred by concluding that Plaintiff was engaged in a conservative course of treatment where Plaintiff rejected physical therapy but was taking Vicodin, Hydrocodone, Diazepam, and Gabapentin).

Plaintiff's 2019 invasive surgery to treat her back pain, *see* AR 29, further undermines the ALJ's conclusion that Plaintiff's treatment was conservative. *See Cagle v. Colvin*, 2016 WL 3912950, at *8 (E.D. Cal. July 20, 2016) (finding that an ALJ erred in concluding that a plaintiff who underwent invasive surgery to treat back pain had engaged in a conservative course of treatment). Moreover, Plaintiff had good reason not to undergo surgery sooner. Plaintiff was initially scheduled to undergo surgery in 2018, but the surgery was postponed until Plaintiff's blood sugar was too high. AR 612, 667; *see Carmickle*, 533 F.3d at 1162. Plaintiff's treatment was not conservative. Thus, the ALJ erred when he discounted Plaintiff's symptom testimony because of Plaintiff's treatment history.

### c. Objective Medical Evidence

Finally, the ALJ found that "[t]he medical record does not support the severity of the claimant's symptoms." AR 28. An ALJ may reject a claimant's symptom testimony if the claimant's testimony is *contradicted* by evidence in the medical record. *Carmickle*, 533 F.3d at 1161. An ALJ may also *consider* the lack of corroborating objective medical evidence as one

factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because the objective medical record did not fully corroborate the testimony. *Robbins*, 466 F.3d at 883; *see also Reddick*, 157 F.3d at 722 ("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ properly discounted Plaintiff's symptom testimony based, in part, on the objective medical evidence. An ALJ may *consider* the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Because the ALJ had other valid reasons for discounting Plaintiff's symptom testimony, the ALJ properly considered that the objective medical evidence did not support Plaintiff's symptom testimony when evaluating Plaintiff's symptom testimony.[3]

---

[3] Whether substantial evidence supports the ALJ's finding that the objective medical evidence does not support Plaintiff's symptom testimony is a close question. The ALJ provided specific examples to support his belief that the objective medical evidence does not support Plaintiff's symptom testimony, emphasizing Plaintiff's normal gait. *See* AR 29. Other evidence, however, is more ambiguous. As the ALJ acknowledged, "[i]maging revealed multilevel mild to severe degenerative changes in [Plaintiff's] cervical and lumbar spines, with central canal stenosis at the L3-L4 level with some neurological involvement." AR 28. Moreover, Plaintiff's "[m]usculoskeletal and neurological examinations have varied." AR 29. The Court, however, will not disturb the ALJ's finding that the objective medical evidence does not support Plaintiff's symptom testimony because, when "the evidence is susceptible to more than one rational interpretation," the substantial evidence standard requires the Court to defer to the ALJ's finding. *Burch*, 400 F.3d at 680-81. As explained above, however, the ALJ's finding that the objective medical evidence does not support Plaintiff's symptom testimony is not, by itself, a clear and convincing reason to reject Plaintiff's symptom testimony. *See Reddick*, 157 F.3d at 722.

B.  **Lay Witness Testimony**

   1. **Standards**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). Such an error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores

*uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2. Statements of Justicia T.

The ALJ appears to have afforded no weight to the opinions that Justicia T., Plaintiff's daughter, expressed in a third-party function report. *See* AR 30. Justicia reported that Plaintiff had "physical limitations w[ith] walking, standing, [and] sitting." AR 296. Plaintiff, Justicia reported, needs a full afternoon of rest after a trip to the grocery store. AR 299. Justicia estimated that Plaintiff could walk no more than ten yards, sit for no more than an hour, and stand for no more than five minutes. AR 301. Instead, Justicia reported, Plaintiff watched television for up to 18 hours a day. AR 300. Justicia concluded by noting that in the nearly two years Plaintiff had lived with Justicia, Justicia "witnessed [a] major deterioration in [Plaintiff's] physical and mental status." AR 303.

The ALJ discounted Justicia's statements because they were not consistent with the objective medical evidence and because they conflicted with Plaintiff's activities of daily living. These are proper reasons for discounting Justicia's statements. Justicia's statements about Plaintiff's limitations closely resembled Plaintiff's own testimony about Plaintiff's symptoms. Because "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness," *Molina*, 674 F.3d at 1114, the ALJ properly discounted Justicia's statements because they conflicted with Plaintiff's activities of daily living. Justicia stated that Plaintiff could sit upright for no more than an hour. Plaintiff's own report, however, about how she spends most of the day conflicts with Justicia's statement. Moreover, although the ALJ's finding that the objective medical record does

not support Justicia's statements is not by itself a germane reason for discounting Justicia's statements, *see Diedrich*, 874 F.3d at 640, that finding is additional support for the ALJ's decision. The ALJ properly discounted Justicia's statements.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 21st day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
